NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MERCHANTS INSURANCE COMPANY of NEW HAMPSHIRE, INC., | : : : : | |
| Plaintiff, | : : | Civil No. 03-5857 (AET) |
| v. | : : | MEMORANDUM & ORDER |
| VERONICA and TIMOTHY HESSLER t/a, COASTAL PAINTING and RESTORATION CO., and GEORGE and STACEY DEPOE, | : : : : : | |
| Defendant. | : : | |

THOMPSON, U.S.D.J.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. The Court has decided this motion based on the submissions of the parties. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the following reasons, Plaintiff's motion is granted in part and denied in part.

BACKGROUND

On January 16, 2003, George and Stacy DePoe instituted a lawsuit against Veronica and Timothy Hessler, trading as Coastal Painting and Restoration Co. (hereinafter "Coastal"), in the Superior Court of New Jersey, Law Division, Monmouth County (hereinafter referred to as the "underlying action"). In the underlying action, Mr. and Mrs. DePoe seek a judgment for bodily injury and property damage resulting from alleged exposure to lead, toxic fumes and dust. The

1

DePoes claim that after contracting with Coastal to paint the exterior of their home, Coastal negligently performed the job causing the aforementioned exposure.

As a result of the underlying action, Coastal sought a legal defense and indemnification under their insurance policy with Merchants Insurance Co. of New Hampshire (hereinafter "Merchants"). Merchants agreed to provide a defense in the underlying action, but reserved the right to seek judicial resolution of the coverage issues in a declaratory judgment action pursuant to the terms of a Non-Waiver agreement. On December 11, 2003, Merchants filed this instant action against Coastal seeking declaratory relief. Specifically, Merchants' Complaint seeks a judgment: (1) that the insurance policy between it and Coastal does not cover the claims alleged in the underlying action; (2) that Merchants owes no duty to provide a defense on behalf of Coastal in the underlying action; (3) and that Merchants owes no duty to indemnify Coastal in the event that an award or judgment is rendered against it in the underlying action.

The insurance policy between Merchants and Coastal contains several noteworthy exclusions precluding coverage. The first is a total pollution exclusion endorsement, which provides as follows:

This insurance does not apply to

    f.    Pollution

        (1)    "Bodily Injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

        (2)    Any loss, cost or expense arising out of any:

            (a)    Request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the

>> effects of "pollutants"; or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

(Pl.'s Br. Ex. D.) The policy also contained an exclusion for liability due to lead, which stated:

> This insurance does not apply to:
>
>> "Bodily Injury" caused in whole or in part, either directly or indirectly, by lead paint or lead contamination, or arising out of or incidental to the inhalation, ingestion, use, handling or contact with lead paint or lead contamination.

Id. Third, the insurance policy excludes injuries and property damage "expected or intended from the standpoint of the insured." Further, the policy contains a provision excluding from coverage "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Id. Lastly, the insurance policy contains a number of business risk exclusions relating to damages arising from Coastal's "work product."

Merchants claims that no coverage under the policy exists because the allegations in the underlying complaint against Coastal concern claims of lead exposure, and exposure to hazardous substances. As such, according to Merchants, summary judgment is appropriate.

## DISCUSSION

I.  Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d

1358, 1366 (3d Cir. 1996).  An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing motions for summary judgment, the evidence is viewed in the light most favorable to the non-moving party. InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003).

A motion for summary judgment is designed to go beyond the pleadings. Celotex, 477 U.S. at 322.  Consequently, to defeat a motion for summary judgment, a party must do more than restate the initial allegations of the complaint, or provide unsupported conclusions of fact. Id.  A non-moving party must point to concrete evidence in the record which supports each element of the claim. Id.  Failure of the non-moving party to provide such evidence entitles the moving party to judgment as a matter of law.  Fed. R. Civ. P. 56.

II.     Interpretation of Insurance Policies

New Jersey Courts recognize that insurance policies are adhesion contracts. See e.g., Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 175 (1992).  Therefore, "courts must assume a particularly vigilant role in ensuring [that insurance policies conform] to public policy and principles of fairness." Id.  To that end, while courts will give an insurance policy's words their plain, ordinary meaning, "[i]f the policy is ambiguous, the policy will be construed in favor of the insured." Nav-Its, Inc., v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005).  Additionally, exclusions within an insurance policy are narrowly interpreted, and construed in "accord with the objectively reasonable expectations of the insured." Id. at 118; see also Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997).

In the present matter, the issue is whether the complaint in the underlying action alleges

claims that are covered under Coastal's insurance policy with Merchants. "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Voorhees, 128 N.J. at 173.

III.     Policy Exclusions Compared to the Allegations in the Underlying Complaint

Count I of the DePoes' complaint in the underlying action alleges that in March of 2002 they contracted with "C[oastal] to paint the exterior of [their] property and to perform services associated with painting, including . . . power washing the exterior and removing old paint." (Pl.'s Br. Ex. A.) The DePoes claim that, prior to commencing work, Coastal informed them that it had tested for lead paint and none was found. Count I goes on to further claim that Coastal negligently performed the work causing lead paint dust and debris to enter the property. Count II of the complaint claims that as a further result of Coastal's negligence, the DePoes suffered emotional distress, and were forced to vacate the premises, incurring expenses for alternative housing.

Count III of the complaint claims Coastal violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq., by stating to the DePoes "that the exterior paint had been tested for hazardous paint and that no hazardous paint was found." (Id.) Count IV similarly claims that Coastal's statements regarding lead paint testing constituted an intentional misrepresentation and/or fraud. In Count V, the DePoes claim that Coastal breached the performance contract "by failing to complete all work required under the contract and by causing plaintiffs to incur damages exceeding the contract price." (Id.) Finally, Count VI alleges that "C[oastal] created a nuisance causing unreasonable interference with plaintiffs['] use and enjoyment of their land,

5

damages to plaintiffs['] property, and personal injuries."[1]  Id.

      A.      *Total Pollution Exclusion Endorsement*

Merchants initially contends that it has no duty to defend or indemnify Coastal because of the total pollution exclusion endorsement contained in the policy.  The New Jersey Supreme Court recently defined the parameters of pollution exclusions in insurance policies in Nav-Its, Inc. v. Selective Insurance Co. of America, 183 N.J. 110 (2005).  In Nav-Its, the New Jersey Supreme Court reviewed the history and development of pollution exclusions and held that these exclusions "should be limited to injury or property damage arising from activity commonly thought of as traditional environmental pollution. . . ."  Id. at 124.  Traditional environmental pollution was defined as "environmental catastrophe related to intentional industrial pollution."  Id.

Merchants proffers two arguments as to why the total pollution exclusion at issue should apply.  First, Merchants asserts that Nav-Its is distinguishable because the absolute pollution exclusion in Nav-Its is different than the total pollution exclusion in this case.  Additionally, Merchants argues that there is an environmental component to the DePoes' claims inasmuch as Coastal "was requested by the health department to remediate the lead paint chips by removing the top layer of soil off the property and laying down fresh soil."  (Pl.'s Reply Br. at 6.)  Merchant's first argument fails because it is clear from the language in Nav-Its that the New Jersey Supreme Court's ruling applies to all types of pollution exclusion clauses.  183 N.J. at 123.  Merchant's second argument fails because, even assuming the Court looks beyond the

---

[1] The complaint contains a seventh count that is not applicable to this case because it concerns the DePoes' homeowners insurance policy.

language of the underlying complaint as this second argument requires, the act of removing the top layer of soil does not constitute an "environmental catastrophe related to intentional industrial pollution." Id. at 124. Therefore, the total pollution exclusion endorsement does not apply in this case.

      B.      *Lead Exclusion*

Merchants next argues that the lead exclusion in the policy precludes coverage in the case at bar. The lead exclusion provides, "[t]his insurance does not apply to: '[b]odily injury' caused in whole or in part, either directly or indirectly, by lead paint or lead contamination, or arising out of or incidental to the inhalation, ingestion, use, handling or contact with lead paint or lead contamination." (Pl.'s Br. Ex. D.) Bodily injury is defined as "sickness or disease sustained by a person, including death resulting from any of these at any time." The plain language of the lead exclusion bars coverage for count I of the underlying complaint because the DePoes seek damages for personal injuries due to lead paint.

In count II the DePoes seek damages for emotional distress and property loss. Addressing the property loss claims first, the lead exclusion does not contain the phrase property loss or property damage in its language. Therefore, the lead exclusion is not applicable to this aspect of count II.

As to count II's emotional distress claims, the Court must analyze whether emotional distress is encompassed by the phrase bodily injury. It is settled that emotional distress with physical manifestations is generally covered in the phrase "bodily injury." See Voorhees, 128 N.J. at 177-78. It is also settled that "in the context of purely emotional distress, without physical manifestations, the phrase 'bodily injury' is not ambiguous," and therefore emotional distress is

7

not covered. SL Indus. Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 202 (1992). This distinction is moot, however, because the definition of bodily injury is consistent throughout the insurance policy in question.

Consistency in defining "bodily injury" is important because if the finder of fact were to conclude that the emotional distress described in the underlying complaint is covered under that phrase, then, although initially obligated to pay for "occurrence[s]" resulting in "bodily injury" under Section I - (A)(1) of the insurance policy, the lead paint exclusion would apply. If, on the other hand, the emotional distress in question is not covered under the phrase "bodily injury", then there is no obligation to defend or possibly indemnify Coastal because Section I - (A)(1) of the policy only obligates Merchants to pay damages due to "bodily injury." Thus, Merchants is entitled to judgment as a matter of law with regard to the emotional distress claims of count II of the underlying complaint.

Count VI of the underlying complaint asserts the cause of action of nuisance. In this count, the DePoes claim damages for loss of use of land and personal injuries. Recovery under a nuisance theory is generally limited to damages sustained for the loss of use and enjoyment of one's land. See Birchwood Lakes Colony Club, Inc. v. Medford Lakes, 90 N.J. 582, 591 (1982). Even assuming the DePoes personal injury claims are sustainable under a nuisance theory, the lead exclusion is applicable to these injuries. Yet, under the same rational discussed above, the lead exclusion does not apply to claims for property damage or for loss of use or enjoyment of land.[2]

---

[2] The Court does not address the lead exclusion's applicability to counts III, IV and V because those counts are addressed in the analysis of other exclusions later in the memorandum.

C. *Intentional Acts Exclusion*

Counts III and IV of the DePoes' complaint allege violations of the New Jersey Consumer Fraud Act and intentional misrepresentation/fraud, respectively. Merchants asserts that the intentional acts exclusion within the policy bars coverage on these two claims. The intentional act exclusion is applicable when "'[b]odily injury' or 'property damage' [is] expected or intended from the standpoint of the insured." (Pl.'s Br. Ex. D.) Following the terms of the exclusion and New Jersey case law construing similar language, the Court will focus on Coastal's "intent to cause the injury rather than on its intent to commit the act that resulted in the injury." SL Indus. Inc., 128 N.J. at 207. Thus, count IV of the underlying complaint is excluded from coverage because "no defense is required when the insured is accused of intentional misrepresentations." Id. at 208 (stating "[a]n intent to misrepresent is sufficient to presume an intent to injure.").

As for Count III, a genuine issue of fact remains as to whether Coastal's statement to the DePoes was made with the intent to cause harm. To violate the New Jersey Consumer Fraud Act "a person must commit an 'unlawful practice' as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. . . ." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). For affirmative acts, "the plaintiff need not prove that the defendant intended to commit an unlawful act." Id. at 17-18. The defendants intent is only relevant if the alleged consumer fraud consists of an omission. Id. at 18. Here, the DePoes can prove their claim under the New Jersey Consumer Fraud Act without proving an intent to injure. Therefore, a genuine issue of fact remains as to whether the intentional acts exclusion applies to count III.

A genuine issue of fact also remains as to whether the intentional acts exclusion applies

to the DePoes' nuisance claim. A nuisance claim can be sustained by a defendant's intentional conduct or by negligent or reckless conduct. See Medford Lakes, 90 N.J. at 591-92. Again, because the DePoes can prove their nuisance claim without having to prove intent, the intentional acts exclusion may or may not apply to Count VI.

      D.     *Business Risk Exclusions*

Merchants cites to several "business risk exclusions" in the policy that exclude coverage on the DePoes breach of contract claim (count V). The business risk exclusions cited are applicable to claims of faulty workmanship. Specifically, exclusion (m) excludes coverage for "'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'. . . ." (Pl.'s Br. Ex. D.) "'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because: . . . b. [y]ou have failed to fulfill the terms of a contract or agreement. . . ." (Id.)

In Newark Ins. Co. v. Acupac Packaging, Inc., the New Jersey Appellate Division analyzed business risk exclusion (m) at issue in this case. 328 N.J. Super. 385, 392-401 (App. Div. 2000). In following well-established precedent, the Appellate Division reaffirmed the scope of exclusion (m) in holding that it applies to contractual liability for faulty workmanship and generally not tort liability. Id. at 396; see also Aetna Cas. & Sur. Co. v. Ply Gem Indus. Inc., 343 N.J. Super. 430, 449 (App. Div. 2001). Here, the plain language of exclusion (m) excludes coverage on the DePoes' breach of contract claim. See also Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 239 (1978) (analyzing a similar provision). Therefore, the policy provides no coverage for count V.

Exclusion (m) is also applicable to count III of the underlying complaint. The Consumer Fraud Act claim in count III is not so much an action in tort as it is a claim for "economic loss[] because the product or completed work is not that for which the damaged person bargained." See Acupac Packaging, Inc., 328 N.J. Super. at 395-96. Therefore, exclusion (m) is applicable to count III of the underlying complaint.

Additionally, the plain language of exclusion (m) and its incorporation of the term "your work" support the determination that exclusion (m) is applicable to count III. In this case "your work" is defined as:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b.    The providing of or failure to provide warnings or instructions.

(Pl.'s Br. Ex. D.) Incorporating this definition within the language of the exclusion (m), it is clear that count III is not covered under the policy because Coastal's affirmative statement prior to commencing work that it had tested for lead paint and that none was found was a misrepresentation that falls under the plain definition of "your work."

The last issue is whether the business risk exclusions in the policy apply to the DePoes count II and VI property damage claims. Exclusion (m) does not apply because the DePoes' count II and VI property damage claims rest in tort. Exclusion (n) does not apply because its scope "is limited to those costs associated with the withdrawing of a product from the market. It

does not exclude from coverage damage already caused to the property of a third party." Acupac Packaging, Inc., 328 N.J. Super. at 402.  Finally, the plain language of exclusions (j), (k) and (l) do not apply to the DePoes' count II and VI property damage claims.

IV.     Defendants' Additional Arguments

Defendants argue that the reasonable expectations doctrine requires coverage on the claims in the underlying complaint.  Under the this doctrine, a court may construe ambiguous language in an insurance contract to comport with the reasonable expectations of the insured. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001).  However, the reasonable expectations doctrine is not applicable in this case because there is no ambiguity in the language of the exclusion provisions discussed.  Therefore, this argument fails.

Additionally, the DePoes argue that this motion must be denied based on the equitable principle of estoppel.  The DePoes insist that Merchants slept on its rights in not filing its declaratory judgment action sooner.  The Court disagrees with this argument because Merchants "reserve[d] the right to seek judicial resolution of the coverage issues in a declaratory judgment action or other legal proceeding, either during the pendency of or upon the conclusion of the [l]awsuit. . . ."  (Pl.'s Br. Ex. B.)  Here, Merchants is within the time period reserved in the non-waiver agreement, and there has been no showing that injustice would result in allowing this action to proceed.

Finally, the DePoes argue that, pursuant to Fed. R. Civ. P. 56(f), summary judgment at this stage of the litigation is premature because discovery has not been completed.  Rule 56(f) allows a district court to refuse to entertain a motion for summary judgment to allow further discovery.  Whether a Rule 56(f) should bar final disposition of a motion for summary judgment

"depends, in part, on 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained.'" San Filipino v. Bongiovanni, 30 F.3d 424, 432 (3d Cir. 1994) (quoting Contractors Assoc. v. City of Philadelphia, 945 F.2d 1260, 1266 (3d Cir. 1991)).  The Depoes argue that there have been no "Rule 26 Initial Disclosures, no response to a Demand for Answers to Interrogatories, no response to a Demand for Answers to a Notice to Produce, and no depositions." (DePoes' Opp. at 13).  However, this argument is unpersuasive because the issues in this motion concern whether Merchants is obligated to defend, and potentially indemnify Coastal in the underlying action.  Further discovery is unnecessary because the standard articulated in Section II of this memorandum only requires the Court to compare the complaint in the underlying action to insurance policy issued to Coastal.  See Voorhees, 128 N.J. at 173.

## CONCLUSION

For these reasons,

It is on this 15th day of August, 2005,

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED with respect to counts I, III, IV, and V of the underlying complaint, and DENIED consistent with this memorandum as to counts II and VI.


                                        s/Anne E. Thompson
                                        _____
                                        ANNE E. THOMPSON, U.S.D.J.